IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| ÁNGEL PICA-HERNÁNDEZ ,<br><br>Plaintiff<br><br>v.<br><br>MARCOS A. IRIZARRY-PAGÁN, in his official and personal capacity as Mayor of the Municipality of Lajas, IVÁN ORTIZ-ESPINOZA, in his personal and official capacity as Administrator of the Municipality of Lajas, JOSÉ PUYARENA-ACOSTA, in his official and personal capacity as "de-facto" Administrator of the Municipality Cementery of Lajas, MANUEL SILVA-VÉLEZ, in his official and personal capacity as Tax Collector for the Municipality of Lajas, and MUNICIPALITY OF LAJAS,<br><br>Defendants | CIVIL 08-1184 (JAG) (JA) |

OPINION AND ORDER

I. PROCEDURAL BACKGROUND

On February 12, 2008, the plaintiff Ángel Pica-Hernández filed this complaint pursuant to 42 U.S.C. § 1983 for the alleged deprivation of rights, privileges and immunities secured by the First and Fourteenth Amendments of the United States Constitution, as well as for violations of rights guaranteed by the Puerto Rico Constitution, Article II, Section 1; and Articles 1802 and 1803 of the Puerto Rico

CIVIL 08-1184 (JAG) (JA)                    2

Civil Code, Puerto Rico Laws Annotated, Title 31, Sections 5141 and 5142. (Docket No. 1.)   A motion for summary judgment was filed on behalf of all defendants on April 23, 2009.  (Docket No. 45.)  The plaintiff filed a memorandum in opposition to summary judgment on May 12, 2009, (Docket No. 57), to which defendants replied on June 10, 2009.  (Docket No. 69.)  For the reasons set forth below defendants' motion is GRANTED.

II.  FACTUAL BACKGROUND

   *A) Employment History*

        Plaintiff Ángel Pica Hernández is an independent contractor who performs work at the Municipal Cemetery of the Municipality of Lajas.  (Docket No. 54-5, at 5.)  On September 3, 2003, the Municipality enacted Ordinance 6 in order to regulate the administration and functioning of the Cemetery.  In part, Ordinance 6 created a Registry of Independent Contractors.  (Docket No. 45-4, at 1, 4.)  On September 5, 2003, the Municipality enacted Ordinance 12 in order to regulate the Registry.  (Docket No. 45-5, at 1.)  In order to be included on the Registry, an independent contractor must be certified by an evaluating board, and keep certain information updated.  (Docket Nos. 83-2, 83-3, 45-11.)  The independent contractors who are admitted to the Registry are not municipal employees, nor do they have a direct contractual relationship with the Municipality.  (Docket No. 57-2, at 2, ¶ 6.)  Rather, the independent contractors become certified to perform

CIVIL 08-1184 (JAG) (JA)                    3

work at the Cemetery upon compliance with certain requirements.  (Id.)  In turn the independent contractors contract their services directly with third parties who wish to bury deceased persons in the Cemetery.  (Id.)

In 2004 Pica sought, and received, certification as an independent contractor at the Cemetery.  (Docket No. 83-2.)  However, as an independent contractor Pica experienced some difficulty performing his work at the Cemetery. One such difficulty occurred in June or July of 2007 when Pica attempted to renew his municipal patent.  (Docket No. 54-11.)  One of the requirements Ordinance 12 imposes upon an independent contractor who wishes to work in the Cemetery is that he "accredit the payment of his municipal patent".  (Docket No. 45-4, at 5, ¶ 4.)  When Pica attempted to renew his patent it was denied by do-defendant Manuel Silva-Vélez.  (Docket No. 54-11, at 2-3.)  Silva denied the patent because Mayor Marcos A. Irizarry-Pagán had instructed him not to grant the patent at that time.  (Id.)  However, Pica was eventually given the patent and continued to work at the Cemetery.  (Docket Nos. 54-5, at 28, 54-10.)

As a registered independent contractor Pica was included in a "registry of turns".  The "registry of turns" is used at the Cemetery to ensure that  tombs are readily available for the burial of deceased individuals whose families did not make arrangements to secure a lot prior to their deaths.  (Docket Nos. 45-18, at 4, ¶ 8, 54-4, at 18-19.)  In order for the "registry of turns" to operate effectively,

CIVIL 08-1184 (JAG) (JA)                    4

independent contractors are assigned lots on which to prepare graves; these prepared graves are referred to as "fosas de turno". (Docket No. 45-18, at 4, ¶ 8.) When a deceased person arrives at the Cemetery without prior arrangements, he is buried in a "fosa de turno". In order to decide which "fosa de turno" will be used, a list of the registered independent contractors is kept. (Id.) As the deceased arrive for burial, the "fosa de turno" of the next independent contractor on the list is used. (Id.) However, if an independent contractor has not completed a "fosa de turno" when his name comes up on the list, his turn is skipped. (Id.) He thus loses his turn to the next contractor on the list.

On August 9, 2007, co-defendant José Puyarena-Acosta became administrator of the Cemetery. (Docket No. 45-20, at 3, ¶ 3.) While Puyarena acted as administrator, co-defendant Iván Ortiz acted as groundskeeper at the Cemetery. After Puyarena became administrator, Pica's turn on the registry of turns was skipped because Ortiz and Puyarena refused to give him lots on which to prepare "fosas de turno". (Docket No. 54-5, at 20-22.) Pica further was told by Puyarena that any contracting between him and a prospective client had to be done in Puyarena's presence. (Docket No. 83-5 at 11.)

In the late summer of 2007, the Municipality engaged in the process of renewing the certification of independent contractors who worked at the Cemetery. (See Docket No. 45-11, dated Aug. 13, 2007.) As part of this renewal

CIVIL 08-1184 (JAG) (JA)                    5

process the Municipality required all independent contractors to provide up-to-date copies of the documents required by Ordinance 6, Article V.  (Docket Nos. 45-4, at 10, 45-11.)   Puyarena wrote a letter to Pica informing Pica that he needed to submit certain documents within 20 days.  (Docket No. 45-11.)  Pica denies receiving the letter.  (Docket No. 57-2, at 5, ¶ 21.)  A meeting was later held at the Cemetery during which the defendants claim independent contractors were told about the document renewal requirements.  (Docket No. 45-13.)  Pica did not attend the meeting; instead he sent Matías Seda-Vélez as his proxy. (Docket No. 54-5, at 7-9.)  Pica claims Matías Seda-Vélez never informed him of the need to submit any documents to the Registry.  (Docket No. 54-5, at 10.) Matías Seda-Vélez denies he was informed that Pica needed to submit renewal documents.  (Docket No. 83-6.)

In any event, Pica did not submit the required renewal documentation by the established guideline, or request an extension of time to do so.  (Docket Nos. 45-14, 54-4, at 11-12.)   As a result he was removed from the Registry on September 18, 2007.  (Docket No. 45-14.)   Following his removal from the Registry Pica attempted three times to gain reinstatement by writing letters to the Mayor.  (Docket Nos. 83-11, 83-12.)  After filing the required documents, Pica was re-admitted to the Registry on November 6, 2008.  (Docket No. 54-6.)

CIVIL 08-1184 (JAG) (JA)                        6

### B) Pica's Political Affiliation

During the 2003 Popular Democratic Party (PDP) primaries Pica supported Mr. César Corales-Cotti who ran in opposition to the Mayor.  (Docket No. 1, at 4, ¶ 13.)  Plaintiff ran for the position of assemblyman for the PDP under the César Corales-Cotti ticket in 2003.  (Id.)  Following Mr. Cotti's defeat plaintiff  began to support the mayoral candidate from the New Progressive Party, Leo Cotti-Torres in his campaign against the Mayor.  (Id. ¶ 14.)

Pica met with the Mayor "some time after the November 2004 elections were held." (Id. ¶ 16.)  Pica claims that during this meeting the Mayor said to him "what balls ("cojones") you have, ah?  You wanted to screw me ["joder".]  With César you wanted to screw me, ah?  Because if right now César had [taken] City Hall, you would have screwed me, right?  But from now on you're going to go to hell ["pal carajo"]."  (Docket No. 83-5, at 10.)  The Mayor does not recall meeting with Pica, although he does acknowledge that he has seen Pica campaigning for César Corrales-Cotti.  (Docket No. 83-9, at 9.)

In 2008, Pica once again ran for the position of assemblyman on the César Corales-Cotti ticket.  (Id. at ¶ 13.)  Pica filed his Notification of Intention to run as assemblyman in the 2008 election on June 15, 2007.  (Docket No. 83-13.)

CIVIL 08-1184 (JAG) (JA)                    7

III.  SUMMARY JUDGMENT

i.  SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  To succeed on a motion for summary judgment, the moving party must show that there is an absence of evidence to support the nonmoving party's position.  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "Once the moving party has properly supported [its] motion for summary judgment, the burden shifts to the nonmoving party, with respect to each issue on which [it] has the burden of proof, to demonstrate that a trier of fact reasonably could find in [its] favor."  Santiago-Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 52 (1st Cir. 2000) (quoting DeNovellis v. Shalala, 124 F.3d 298, 306 (1st Cir. 1997)).

The court must view the facts in a light most hospitable to the nonmoving party, drawing all reasonable inferences in that party's favor.  Patterson v. Patterson, 306 F.3d 1156, 1157 (1st Cir. 2002) (quoting Griggs-Ryan v. Smith, 904 F.2d 112, 115 (1st Cir. 1990)).  A fact is considered material if it has the potential to affect the outcome of the case under applicable law.  Nereida-González v. Tirado-Delgado, 990 F.2d 701, 703 (1st Cir. 1993).  The court must

CIVIL 08-1184 (JAG) (JA)                    8

determine whether either party is entitled to judgment as a matter of law on facts that are not disputed.  <u>Adria Int'l Group, Inc. v. Ferré Dev., Inc.</u>, 241 F.3d 103, 107 (1st Cir. 2001).

ii.  <u>LOCAL RULE 56</u>

In the District Court of Puerto Rico, Local Rule 56(b), requires a motion for summary judgment to be accompanied by a separate, short and concise statement of material facts that supports the moving party's claim that there are no genuine issues of material fact in dispute.  These facts are then deemed admitted until the nonmoving party provides a similarly separate, short and concise statement of material facts establishing that there is a genuine issue in dispute.  <u>Local Rules of the United States District Court for the District of Puerto Rico</u>, Local Rule 56(e) (2004); <u>Morales v. A.C. Orssleff's EFTF</u>, 246 F.3d 32, 33 (1st Cir. 2001); <u>Ruiz Rivera v. Riley</u>, 209 F.3d 24, 27-28 (1st Cir. 2000); <u>Domínguez v. Eli Lilly & Co.</u>, 958 F. Supp. 721, 727 (D.P.R. 1997); <u>see also</u> <u>Corrada Betances v. Sea-Land Serv., Inc.</u>, 248 F.3d 40, 43 (1st Cir. 2001).

Additionally, the facts must be supported by specific reference to the record, thereby pointing the court to any genuine issues of material fact and eliminating the problem of the court having "to ferret through the Record." <u>Domínguez v. Eli Lilly & Co.</u>, 958 F. Supp. at 727; <u>see also</u> <u>Carmona Ríos v. Aramark Corp.</u>, 139 F. Supp. 2d 210, 214-15 (D.P.R. 2001); <u>Velázquez Casillas v. Forest Lab., Inc.</u>, 90

CIVIL 08-1184 (JAG) (JA)                    9

F. Supp. 2d 161, 163 (D.P.R. 2000).  Failure to comply with this rule may result, where appropriate, in judgment in favor of the opposing party.  Morales v. A.C. Orssleff's EFTF, 246 F.3d at 33 (quoting Stepanischen v. Merch. Despatch Transp. Corp., 722 F.2d 922, 931 (1st Cir. 1983)); see Ríos-Jiménez v. Principi, 520 F.3d 31, 38-39 (1st Cir. 2008); Guzmán-Rosario v. United Parcel Serv., Inc., 397 F.3d 6, 9 (1st Cir. 2005).

The defendants submitted a statement of uncontested material facts on April 23, 2009.  (Docket No. 45-2.)  Accordingly, plaintiff submitted a statement of material facts as to which he alleges there is dispute.  (Docket No. 57-2, dated May 12, 2009.)   Parties have thus complied with the local anti-ferret rule.

III.  DISCUSSION

When analyzing a section 1983 claim the court must determine "(1) whether the conduct complained of was committed by a person acting under the color of state law; and (2) whether this conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States." Gutiérrez-Rodríguez v. Cartagena, 882 F.2d 553, 559 (1st Cir. 1989) (quoting Parratt v. Taylor, 451 U.S. 527, 535 (1981), overruled on other grounds by Davidson v. Cannon, 474 U.S. 344, 347 (1986)); see Rodríguez-Borton v. Pereira-Castillo, 593 F. Supp. 2d 399, 411 (D.P.R. 2009).  The first prong of a 1983 claim

CIVIL 08-1184 (JAG) (JA)                    10

–that the conduct be performed by a person acting under color of state law– is satisfied here.  "Puerto Rico is considered a state for section 1983 purposes," <u>see</u> <u>Redondo-Borges v. United States Dep't of Hous. & Urban Dev.</u>, 421 F.3d 1, 7 (1st Cir. 2005) (citing <u>Deniz v. Municipality of Guaynabo</u>, 285 F.3d 142, 146 (1st Cir. 2002)).   Further, the complaint challenges actions attributed to the local government of the municipality of Lajas and its functionaries.  Thus, my inquiry will focus on the second prong, whether there has been a deprivation of rights, privileges, or immunities secured by the Constitution or laws of the United States. <u>See</u> <u>Behavioral Healthcare Partners, Inc. v. González-Rivera</u>, 392 F. Supp. 2d 191, 201 (D.P.R. 2005).

   *A. Pica's Fourteenth Amendment Claim*

      The plaintiff contends that his removal from the Registry list resulted in a violation of his due process rights under the Fourteenth Amendment.   The Fourteenth Amendment to the United States Constitution provides that no state shall "deprive any person of life, liberty, or property, without due process of law . . . . " U.S. Const. amend. XIV, § 1.  In cases "where allegations of life or liberty deprivation are absent, as in the instant case, the *sine qua non* of a due process clause claim under § 1983 is that a state official causes a property loss under color of state law."  <u>Pagán-Cuebas v. Vera-Monroig</u>, 91 F. Supp. 2d 464, 470 (D.P.R. 2000) (citing <u>Daniels v. Williams</u>, 474 U.S. 327 (1986)).

CIVIL 08-1184 (JAG) (JA)                    11

In order for Pica to succeed in his claim that he was deprived of property when he was removed from the Registry, he must first show that he had a constitutionally protected property interest in his place on the Registry.  "To establish a constitutionally protected property interest, a plaintiff 'must have more than an abstract need or desire for [a thing] . . . [and] more than a unilateral expectation of it.'" Redondo-Borges v. United States Dep't of Hous. & Urban Dev., 421 F.3d at 8 (quoting Bd. of Regents of State Coll. v. Roth, 408 U.S. 564, 577 (1972)).  "A plaintiff instead must 'have a legitimate claim of entitlement to it.'" Id.

In this case it is undisputed that Pica was an independent contractor.  With respect to independent contractors "[we] have held with a regularity bordering on the echolalic that a simple breach of contract does not amount to an unconstitutional deprivation of property." Redondo-Borges v. Dep't of Hous. & Urban Def., 421 F.3d at 10; see, e.g., Lee v. Life Ins. Co. of N. Am., 23 F.3d 14, 20 n.11 (1st Cir. 1994); Boston Envtl. Sanitation Inspectors Ass'n v. City of Boston, 794 F.2d 12, 13 (1st Cir. 1986) (per curiam); Casey v. DePetrillo, 697 F.2d 22, 23 (1st Cir. 1983) (per curiam); Jiménez v. Almodovar, 650 F.2d 363, 370 (1st Cir. 1981).  However, a departure from the above mentioned general rule is possible.  "To show the deprivation of a property interest in the independent contractor context which might justify a departure from this settled

CIVIL 08-1184 (JAG) (JA)                    12

position, a plaintiff must allege that he had a protected status or that his contract could only be terminated 'for cause.'" Behavioral Healthcare Partners, Inc. v. González-Rivera, 392 F. Supp. 2d at 202 (citing Redondo-Borges v. United States Dep't of Hous. & Urban Dev., 421 F.3d at 10).

In support of the assertion that he has a property interest in remaining on the Registry, the plaintiff first argues that to the extent an independent contractor is in compliance with the requirements of Ordinances 6 and 12 he has a reasonable expectation of being included on the Registry.  Based on the premise that an independent contractor who complies with Ordinances 6 and 12 has a reasonable expectation of inclusion on the Registry, plaintiff claims that he was deprived of a property interest because he was removed from the Registry after being properly certified.  Without more the plaintiff states that he acquired a protected status.

I will assume arguendo that an independent contractor who complies with Ordinances 6 and 12 has a reasonable expectation of being included on the Registry.  This unilateral expectation however is not sufficient to find that Pica had a property interest in his inclusion in the Registry.  "A person's interest in a benefit is a "property" interest for due process purposes if there are such rules or mutually explicit understandings that support his claim of entitlement to the benefit and that he may invoke at a hearing."  Perry v. Sindermann, 408 U.S.

CIVIL 08-1184 (JAG) (JA)                    13

593, 601 (1972) (citing Bd. of Regents of State Coll. v. Roth, 408 U.S. at 577).

The plaintiff offers no evidence to support that there was a mutually explicit

understanding or any rule to validate his claim of entitlement to his inclusion on

the Registry.

       The plaintiff next attempts to argue that he should be found to have a

property interest based on a combination of mis-cited case law and an erroneous

discussion of protections offered to municipal employees.  Plaintiff first cites

Wehran-P.R., Inc. v. Municipality of Arecibo, 106 F. Supp. 2d 276, 287 (D.P.R.

2000), for the proposition that "[t]his court has found a property interest arising

out of a contract when the contract confers a special status such as employment."

(Docket No. 57, at 5.)  However, no such finding was made in Wrehran.  The

Wrehran court in fact refused to find for the plaintiff stating:

               In the present case, Wehran entered into what
        appeared to be a garden variety commercial contract to
        provide the Municipality of Arecibo with services related
        to the landfill.  Wehran has proffered no reason –and the
        Court cannot conceive of one– to justify a holding that
        the contract created a protectable property interest or
        that Wehran otherwise has a viable procedural due
        process claim for the alleged breach by the Municipality.

Id. at 288.

       The plaintiff next argues that his certification as an independent contractor

eligible to be in the Registry was as central to him as actual employment.

CIVIL 08-1184 (JAG) (JA)                    14

However, it is not disputed that the plaintiff was never directly employed by the Municipality.

Finally, the plaintiff argues that "[i]n light of this Circuit's precedent acknowledging constitutional due process protection in the independent contract context, together with the protected status conferred on Plaintiff by compliance with municipal ordinances requirements, and the significance to Plaintiff's need to continue to earn a living at the municipal cemetery . . . " he should be found to have a property interest right in his place on the Registry.  (Docket No. 57, at 5.) The precedent the plaintiff references is non-existent.  His expectations alone are not sufficient to find a protected status was conferred upon him, and plaintiff was never directly employed by the Municipality.  Therefore, a reasonable jury could not find that the plaintiff had a property interest in his inclusion on the Registry. Without an established property interest the plaintiff's Fourteenth Amendment claim must fail.  Thus, summary judgment must be granted to all defendants in regard to the Fourteenth Amendment claim.

      *B. Pica's First Amendment Claims*

      The First Amendment protects non-policymaking public employees from adverse employment actions based on their political opinions.  See Rutan v. Republican Party of Ill., 497 U.S. 62, 75-76 (1990); Padilla-García v. Guillermo Rodríguez, 212 F.3d 69, 74 (1st Cir. 2000).  Independent contractors are not

CIVIL 08-1184 (JAG) (JA)                15

excluded from this protection; "[the Supreme Court] decline[s] to draw a line excluding independent contractors from the First Amendment safe-guards of political association afforded to employees." O'Hare Truck Serv., Inc. v. City of Northlake, 518 U.S. 712, 726 (1996).

In order to make out a prima facie case of political discrimination a plaintiff must show

> (1) the plaintiff and the defendant belong to opposing political affiliations; (2) the defendant has knowledge of the plaintiff's opposing political affiliation; (3) there is a challenged employment action; and (4) "sufficient evidence, whether direct or circumstantial . . . that political affiliation was a substantial or motivating factor . . . that the challenged employment action stemmed from politically based animus."

Peguero-Moronta v. Santiago, 464 F.3d 29, 48 (1st Cir. 2006) (quoting González-de-Blasini v. Family Dep't, 377 F.3d 81, 85-86 (1st Cir. 2004)).[1]

As to the first prong, neither party disputes that the plaintiff and the Mayor belonged to opposing political parties.  Therefore, there is sufficient evidentiary support to satisfy the first prong of Pica's political discrimination claim against the Mayor.

---

[1]Plaintiff argues that two separate tests are used to determine political discrimination; one test when the plaintiff offers direct evidence and a second test when only circumstantial evidence is offered.  Plaintiff's only support for this assertion is Vesprini v. Shaw Contract Flooring Servs., Inc., 315 F.3d 37 (1st Cir. 2002).  However, that case dealt with the Age Discrimination in Employment Act and makes no reference to political discrimination.

CIVIL 08-1184 (JAG) (JA)                    16

However, the plaintiff makes no allegations as to any other defendants' political affiliation.  Without any allegation or evidence that defendants Ortiz, Puyarena, and Silva belong to an opposing political affiliation, a reasonable fact finder could not conclude that plaintiff is able to fulfill the burden of establishing a prima facie case of political discrimination against said defendants.  Therefore, summary judgment must be granted as to plaintiff's First Amendment claims against defendants Ortiz, Puyarena, and Silva.

Neither party addresses the second prong of a prima facie case of political discrimination which requires the plaintiff to show that the Mayor had knowledge of the plaintiff's opposing political affiliation.  However, a cursory reading of the record unveils sufficient evidence to allow a reasonable fact finder to conclude the Mayor had knowledge of the plaintiff's political affiliation.  The plaintiff ran as an assembly man on a ticket in direct opposition to the Mayor.  (Docket No. 1, at 4, ¶ 13.)  Further, the Mayor admits to seeing Pica campaigning for César Corrales.  (Docket No. 83-8, at 3.)  The plaintiff also claims that he had a conversation with the Mayor during which the Mayor made reference to Pica's support of César Corrales.  (Docket No. 57-2, at 12, ¶ 56.)  Based on this evidence a reasonable fact finder could conclude that the Mayor knew of the plaintiff's political affiliation.  Thus, the second prong of the prima facie case of political discrimination is satisfied for purposes of this motion.

CIVIL 08-1184 (JAG) (JA)                    17

As to the third prong of a political discrimination case, the plaintiff alleges that there were numerous challenged employment actions taken against him. The plaintiff first alleges that he suffered a challenged employment action when he was removed from the Registry. Pica's removal from the Registry prevented him from working at the Cemetery. As such it was effectively a discharge. "[A] government employer cannot discharge public employees merely because they are not sponsored by or affiliated with a particular political party." Galloza v. Foy, 389 F.3d 26, 28 (1st Cir. 2004) (citing Elrod v. Burns, 427 U.S. 347, 350 (1976)). Thus, Pica's removal from the Registry is sufficient to satisfy the challenged action prong of a prima facie case of political discrimination.

Pica also alleges he suffered challenged employment actions prior to his removal from the Registry. "Actions of informal harassment, as opposed to formal employment actions like transfers or demotions, can be the basis for first amendment claims *if the motive was political discrimination*; but this is so only if the discriminatory acts are '*sufficiently severe* to cause reasonably hardy individuals to compromise their political beliefs and associations in favor of the prevailing party.'" Díaz-Ortiz v. Díaz-Rivera, 611 F. Supp. 2d 134, 142-43 (D.P.R. 2009) (quoting Martínez-Vélez v. Rey-Hernández, 506 F.3d 32, 42 (1st Cir. 2007) (quoting Agosto-de-Feliciano v. Aponte-Roque, 889 F.2d 1209, 1217 (1st Cir. 1989)).

CIVIL 08-1184 (JAG) (JA)                    18

Plaintiff wishes to base his First Amendment claim on harassment arising from numerous acts.  Pica first offers that his turn to prepare tombs was skipped after it came up in the "registry of turns".  In support of this Pica offers his deposition testimony.  In his deposition Pica testified that when it was his turn to prepare a tomb he was not told where to dig the tomb.  (Docket No. 54-4, at 21.)  As a result Pica would not have a "fosa de turno" prepared before a cadaver arrived and therefore his turn would be skipped.  (Id.)

Pica next offers that construction work was increasingly being assigned to Eddie Cintrón, a PDP and Mayor Irizarry contributor, rather then himself.  In support of this claim Pica offers his testimony that when he was going to do construction work on a lot for a prospective client, his client would not be allowed to purchase the lot, and later the lot would be sold to Cintrón.  (Docket No. 83-4, at 5-9.)  Plaintiff claims that this adversely effected his income.

Pica next offers that he was denied a patent permit which "is a required document for the renewal process".  (Docket Nos. 57, at 15, 54-11, at 2-3.)  However, Pica admits that this permit was later granted.  (Docket Nos. 54-5, at 28, 54-11, at 3.)  Finally, Pica offers that contracting between himself and a prospective client had to be done in the presence of the administrator of the Cemetery (Puyarena).  (Docket No. 83-4, at 11.)

CIVIL 08-1184 (JAG) (JA)                    19

        I cannot conclude that Pica has provided sufficient evidence to establish a claim for political harassment based on the above allegations.  Plaintiff makes no reference to the frequency with which his turn was skipped.  Pica also offers no evidence of the frequency with which lots were given to Cintrón over him.  The plaintiff mentions that he was denied a patent permit.  However the patent permit was later granted, and plaintiff offers no evidence as to any negative effects the delay caused.  Plaintiff argues that he was forced to conduct contracting in the presence of the Cemetery administrator.  However this assertion is without any supporting evidence or allegations as to negative effects or the severity of the situation.  The plaintiff also fails to provide any allegations or evidence that the harassment he faced at the Cemetery was severe enough to drive him to consider changing his political affiliations or beliefs.  Nor does he offer any evidence to support his claim that his income was affected.  Furthermore, there is no evidence offered that political discrimination was the motivating factor for any of the above mentioned acts.  Thus, Pica fails to offer sufficient evidence to allow a reasonable fact finder to conclude the alleged harassment he faced at the Cemetery prior to his removal from the Registry was discriminatory, and sufficiently severe to compel a reasonably hardy individual to change his political beliefs.  Therefore, Pica has no political discrimination cause of action based on harassment faced prior to his removal from the Registry.

CIVIL 08-1184 (JAG) (JA)                    20

        The fourth prong of a prima facie case of political discrimination requires that Pica  provide sufficient evidence that political affiliation was a substantial or motivating factor in his removal from the Registry, and that the removal stemmed from a politically based animus.  "Proving that political affiliation was a substantial or motivating factor in an adverse employment decision requires more than '[m]erely juxtaposing a protected characteristic –someone else's politics– with the fact that the plaintiff was treated unfairly.'"  Peguero-Moronta v. Santiago, 464 F.3d at 45 (quoting Padilla-García v. Guillermo Rodríguez, 212 F.3d at 74).  "[T]he mere fact that an adverse action was taken after an employee exercises First Amendment rights is not enough by itself to establish a *prima facie* case." Peguero-Moronta v. Santiago, 464 F.3d at 45 (citing Bd. of County Comm'rs v. Umbehr, 518 U.S. 668, 684-85 (1996)).

        Pica first attempts to satisfy the fourth prong by offering his own deposition testimony about a conversation he allegedly had with the Mayor.  Pica claims that during this conversation the Mayor said to him "what balls ["cojones"] you have, ah?  You wanted to screw me ["joder"] With César you wanted to screw me, ah? Because if right now César had gotten City Hall, you would have screw me, right? But from now on you're going to go to hell ["pal carajo"]."  (Docket No. 83-5, at 10.) Plaintiff claims that this statement "addressed (moreover resented) Plaintiff's political support for a political adversary of Mayor Izzarry." (Docket No 57, at 14.)

CIVIL 08-1184 (JAG) (JA)                 21

In his complaint the plaintiff claims that this meeting took place "[s]ometime after the November 2004 elections were held." (Docket No. 1, at 4, ¶ 16.)  The defendant offers that it is undisputed that the plaintiff was certified to the Registry in 2004, and remained certified after updating his information in 2006.  (Docket No. 57-2, at 4, ¶ 18.)

Pica argues that these remarks do not stand alone, but rather are a part of a continuous discriminatory pattern against him.  As evidence of this alleged continuous discriminatory pattern the plaintiff offers: the denial of his patent permit; the refusal to permit him to do construction work in a new lot to be sold to his potential clients; the allegation that lots he wished to purchase were not sold to him but instead to Eddie Cintrón who is a political supporter of the Mayor; the refusal of the Cemetery administrator (Puyarena) to assign the plaintiff lots he could construct tombs upon; and finally the demand that any contracting by plaintiff with new clients be done in the presence of Puyarena.

The plaintiff however fails to clearly articulate exactly what parts of this alleged continuous discriminatory pattern against him are attributable to the Mayor.  However, an extensive search of the plaintiff's memorandum reveals four allegations against the Mayor.  First the plaintiff attempts to allege that the Mayor was involved in the decision to assign lots to Cintrón rather than himself.  This allegation however seems to be based upon two separate and incompatible

CIVIL 08-1184 (JAG) (JA)                    22

theories.  First, plaintiff alleges that "Ortiz under direct orders from Mayor Irizarry, would not allowed Plaintiff's client to purchase the lot and therefore do the construction work and eventually the same lot would be sold to Eddie Cintron . . . . " (Docket No. 57, at 16.)  However the plaintiff then asserts that Ortiz' orders not to sell lots to Pica's clients "were given by co-Defendant José Puyarena." (Id.)  No evidence other then the plaintiff's own testimony is offered to support either of these theories.  Without any supporting evidence, or even a cognizable allegation as to the Mayor's involvement, I cannot conclude that these allegations supply evidence that Pica's removal from the Registry was based on the Mayor's alleged political animus towards him.

The second allegation against the Mayor that can be found in the plaintiff's brief is that the Mayor "refused to allow the Plaintiff to submit his documents for despite Plaintiff's numerous requests to him." (Docket No. 57, at 10.)  Clarity as to what the plaintiff means by this can only be gained through reference to plaintiff's statement of undisputed facts, which he cites for support.  Plaintiff's statement of undisputed facts at paragraph 48 states that after the plaintiff was removed from the registry he made three attempts to file documents in order to be reinstated.  (Docket Nos. 83-11, 83-12.)  The defendants claim that these attempts were all made after the plaintiff failed to provide the documents before a deadline, and an extension of that deadline had passed.  (Docket Nos. 79-3, 54-

CIVIL 08-1184 (JAG) (JA)                    23

7, at 7-9.)   Plaintiff's difficulty filing documents for his reinstatement to the registry may conceivably be evidence of some type of animus against him. However this difficulty is insufficient to allow a reasonable fact finder to conclude that the original removal from the Registry was based upon political animus.

The plaintiff's third allegation against the Mayor is that Manuel Silva, at behest of the Mayor, refused to issue plaintiff his patent.  However, plaintiff offers no evidence that the refusal of the patent was based on any type of political animus.  Further, the patent was eventually issued.

Finally the plaintiff claims that the Mayor made the decision to remove him from the Registry two months after he filed his Notification of Intention to run as an assemblyman under the ticket of César Corrales.  The only evidence plaintiff offers to support the assertion that the Mayor made the decision to remove him from the registry is a letter which the plaintiff wrote to the Mayor asking to be put back on the Registry.  (Docket No. 83-11.)  Assuming arguendo that the Mayor did in fact make the decision to remove Pica from the Registry merely juxtaposing the challenged employment action with the Mayor's opposing political affiliation is not sufficient to establish a prima facie case of political discrimination.  See, e.g., Marrero-Gutiérrez v. Molina, 491 F.3d 1, 9-10 (1st Cir. 2007); Peguero-Moronta v. Santiago, 464 F.3d at 45.  The close proximity of plaintiff's removal

CIVIL 08-1184 (JAG) (JA)                    24

from the Registry to his Notification of Intention to run as an assemblyman also fails to establish political animus.

In sum, in his attempt to show that political animus was a substantial or motivating factor in the decision to remove him from the Registry, the plaintiff offers: a conversation with the Mayor three years prior to the removal, contradictory and unsubstantiated allegations regarding the Mayor's involvement in deciding who was assigned lots at the cemetery, Pica's difficulty filing documents during his attempt to be reinstated to the Registry, a delay in the issuing of a patent, and the proximity of the plaintiff's filing his Notification of Intention to run as assemblyman and the Mayor's decision to remove him from the Registry.   This evidence is insufficient to establish the required causal connection between any political animus and the plaintiff's removal from the registry, "even when circumstantial evidence may be sufficient to support a finding of political discrimination, plaintiffs must still make a fact-specific showing that a causal connection exists between the adverse employment action and their political affiliation." Díaz-Ortiz v. Díaz-Rivera, 611 F. Supp. 2d at 143.  Therefore, a reasonable fact finder could not find political animus was a substantial or motivating factor in the decision to remove Pica from the Registry.   Thus, plaintiff's First Amendment claim against the Mayor is dismissed.

CIVIL 08-1184 (JAG) (JA)                    25

### C. First Amendment Claim Against The Municipality of Lajas

Plaintiff alleges that the Municipality is liable under section 1983 for violating his First Amendment rights.  To this end the plaintiff argues that because the Mayor was a person with final policy-making authority his decisions subject the Municipality to liability.

> [A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983.

Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978).  Assuming arguendo that the Mayor's decisions subject the Municipality to liability, I have already found that the Mayor did not violate plaintiff's First Amendment Rights.  With no injury inflicted the Municipality cannot be subject to any liability.  Thus, plaintiff's First Amendment claim against the Municipality is dismissed.

## IV.  CONCLUSION

There remains no genuine issue of material fact as to Pica's Fourteenth Amendment or First Amendment claims against any defendants.  Accordingly, all of plaintiff's claims brought pursuant to 42 U.S.C. § 1983 are DISMISSED with prejudice.  Without any federal claims I decline to exercise jurisdiction over Pica's state law claims.   Thus, Pica's claims pursuant to state law are DISMISSED

CIVIL 08-1184 (JAG) (JA)                    26

without prejudice.  In view of the above, the Clerk is directed to enter judgment

dismissing the complaint.

      At San Juan, Puerto Rico, this 1st day of December, 2009.

                                   S/ JUSTO ARENAS
                         Chief United States Magistrate Judge